John GOODMAN, Appellant,

v.

Lisa GALLERANO and Roxanne Roberts, Appellees.

No. 05-84-01106-CV.

Court of Appeals of Texas, Dallas.

June 26, 1985.

B. Prater Monning, III, Dallas, for appellant.

Charles P. Storey, Wm. David Simmons, Philip Wilson, Dallas, for appellees.

Before AKIN, GUILLOT and HOWELL, JJ.

GUILLOT, Justice.

Appellant, Dr. John Goodman, sued appellees, Lisa Gallerano and Roxanne Roberts, for stating orally and in writing that Goodman had mismanaged funds, plagiarized research, and violated professional ethics while he was under consideration for tenure as a full professor at the University of Dallas. Gallerano and Roberts filed motions for summary judgment which were granted on August 20, 1984. Goodman appeals from the summary judgment

granted appellees. For the reasons below, we reverse and remand for trial.

In the spring of 1984, Goodman became eligible for tenure as a professor of economics at the University of Dallas. On March 19, 1984, Robert F. Sasseen, President of the University, wrote Goodman, advising him that certain charges of "unprofessional conduct" had been made against him by Gallerano and Roberts. The President forwarded a copy of this letter to the Rank and Tenure Committee of the University. Following receipt of the letter, Goodman was denied tenure. The financial and professional security afforded appellant by a tenured position was lost and his ability to secure new employment was impaired.

Goodman sued Gallerano and Roberts claiming that their allegations of misconduct attributed to him in the March 19, 1984, letter were false. Gallerano and Roberts filed motions for summary judgment, coupled with affidavits admitting that they made the statements, but stating in conclusory form, "The statements I made were truthful and were made in good faith in response to questions posed [by University of Dallas officials]; they were not made with malicious intent." Goodman contends that the trial court erred in granting the motions for summary judgment because Gallerano and Roberts have not demonstrated entitlement to judgment as a matter of law in that there remained disputed issues of material facts. We agree.

Since the trial court sustained motions for summary judgment filed by Gallerano and Roberts, the question on appeal, as well as in the trial court, is whether the summary judgment proof establishes as a matter of law that the investigation conducted by the University of Dallas through its Rank and Tenure Committee and all statements or evidence presented therein are privileged. The privileged nature of the communication is alleged to be established by the affidavits of Gallerano and Roberts and by the memorandum in support of the motions for summary judgment. We hold that neither the affidavits nor the memorandum establish that the communications were absolutely privileged. *See Moore and Associates v. Metropolitan Life Insurance Co.*, 604 S.W.2d 487 (Tex. Civ.App.—Dallas 1980, no writ); *Zarate v. Cortinas*, 553 S.W.2d 652 (Tex.Civ.App.—Corpus Christi 1977, no writ).

Absolute privilege is limited to communications uttered in executive, legislative, judicial and quasi-judicial proceedings and the marital relationship. *Reagan v. Guardian Life Insurance Co.*, 140 Tex. 105, 166 S.W.2d 909 (1942); *Moore and Associates*, 604 S.W.2d at 489. Because the communications involved in this case do not come within the traditional areas of absolutely privileged communications, we decline to extend an absolute privilege to this type of communication. To do so would unnecessarily deny those innocent victims of maliciously or recklessly filed complaints an opportunity to seek compensation for their injury. We perceive of no benefit to society which necessitates holding such communications to be absolutely privileged. If a person makes this type of a statement with malice, that person should not be permitted to invoke the defense of privilege but should answer in damages. *See Zarate*, 553 S.W.2d at 655–56.

Neither can the judgment stand if the trial court based the granting of the summary judgment on the finding of a qualified privilege. To assert that a defamation is qualifiedly privileged is an affirmative defense that is available only if evidence shows that the communication was made in good faith and without malice. *Beaumont Enterprise and Journal v. Smith*, 687 S.W.2d 729 (1985). Gallerano and Roberts argue that when they filed their affidavits stating that they believed that the challenged article was a fair and accurate statement, they proved lack of actual malice. We cannot agree.

Texas Rule of Civil Procedure 166–A provides that a summary judgment may be based on the uncontroverted testimonial evidence of an interested party provided that the evidence is "clear, positive,

direct, otherwise credible ... and could have been readily controverted." Based upon the Texas Supreme Court case of *Beaumont*, 687 S.W.2d 729, the affidavits of Gallerano and Roberts, as to their own states of mind, will not support a summary judgment. *Hunsucker v. Omega Industries*, 659 S.W.2d 692 (Tex.Civ.App.—Dallas 1983, no writ); *see Wise v. Dallas Southwest Media Corp.*, 596 S.W.2d 533, 535–36 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.); *see also Lewisville State Bank v. Blanton*, 525 S.W.2d 696 (Tex. 1975). Uncontroverted testimony of interested witnesses, in a summary judgment proceeding, does no more than create an issue of fact as to the credibility of the interested witnesses. *Hunsucker*, 659 S.W.2d at 697. Accordingly, Gallerano and Roberts have failed to establish that they are entitled to judgment as a matter of law and that the trial court erred in granting summary judgment.

The judgment of the trial court is REVERSED and the cause is REMANDED for trial.

HOWELL, J., concurs.